# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LUIZ ALVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:07-CV-305-TS |
| | ) |
| MASTERS ENTERTAINMENT GROUP, LLC, | ) |
| and PAULO TEIXEIRA, | ) |
| | ) |
| Defendants | ) |

## OPINION and ORDER

Before the Court is Defendants' Motion to Dismiss or Alternatively, For *Colorado River* Abstention [DE 6], filed August 31, 2007. The Defendants, Masters Entertainment Group, LLC, and Paulo Teixeira, ask the Court to dismiss this lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, the Defendants ask the Court to dismiss or stay the action under the *Colorado River*[1] abstention doctrine because there is a pending state-court lawsuit involving the same claims and parties.

## BACKGROUND

On July 5, 2007, the Plaintiff, Luiz Alves, filed a five-count Complaint against the Defendants. The Complaint states that the Plaintiff immigrated to the United States and gained entry with a H-1B visa in order to work for the Defendants. It also states that Defendant Teixeira "initiated a legal process with the goal of removing Mr. Alves from the Company," (Compl. ¶ 24), and refused to pay the Plaintiff (*id.* ¶¶ 25–30). As a result, the Complaint states, the

---

[1] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–20 (1976).

Plaintiff is owed $10,879.11 in wages, but the amount is doubled to $21,758.22 based on statutory penalties. (*Id.* ¶ 32.)

The Complaint's first count is a state law claim for unpaid wages. The second count is for breach of employment contract. The third count is for breach of an employment contract "that is a part of [the Plaintiff's] H-1B$^2$ visa," (Compl. ¶ 43), which he also terms an H-1B "visa agreement," (*id.* ¶ 45.) The fourth count is impermissible withholding of wages. The fifth count is a quantum meruit claim. The Plaintiff seeks wages and benefits owed in the form of liquidated damages.

The Complaint states that the Court has jurisdiction over the case "pursuant to the Federal [*sic*] Labor Standards Act, 29 U.S.C. § 216[,] and 28 U.S.C. § 1331. Plaintiff has consented to file this lawsuit under the Fair Labor Standards Act." (Compl. ¶ 4.) The Complaint invokes supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

On August 31, 2007, the Defendants filed the present Motion to Dismiss or Alternatively, For *Colorado River* Abstention [DE 6], along with a Brief in Support [DE 7]. The Defendants say there are two potential grounds for federal jurisdiction in the Complaint, breach of the agreement in the H-1B visa and a violation of the FLSA. The Defendants argue that the first should be dismissed under Rule 12(b)(1), and the second should be dismissed under Rule 12(b)(6). On October 31, 2007, the Plaintiff filed his Response [DE 9] and his Brief in Opposition to Motion to Dismiss or Alternatively, For Colorado River Abstention [DE 10]. On November 9, 2007, the Defendants filed their Reply [DE 11].

---

$^2$ The Plaintiff in his Complaint refers to the "H1-B" visa. This type of visa is actually known as a H-1B visa. The Court will refer to this type of visa as an H-1B throughout this Opinion even when quoting from the Plaintiff's Complaint.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true and views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Under the Federal Rules of Civil Procedure the plaintiff need only "set out in [his] complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim" *Scott v. City of Chi.,* 195 F.3d 950, 951 (7th Cir. 1999), and the "grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Fed. R. Civ. P. 8(a). The complaint must provide more than labels and conclusions, a formulaic recitation of the elements of a cause of action, or facts that do not raise a right to relief above the speculative level. *Bell Atl. Corp.*, 127 S. Ct. at 1964–65. The court may consider all allegations made in the complaint as well as any attachments accompanying the complaint. Fed. R. Civ. P. 10(c).

Also, "a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 669 (7th Cir. 2008). *See also Vincent v. City Coll. of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007) (stating the same proposition and noting dismissal of such a suit would be done under Rule 12(b)(6)). The Court may consider the exhibits to the Plaintiff's complaint as part of this Rule 12(b)(6) analysis. *Thompson v. Ill. Dept.*

*of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) ("The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs.") (citing Fed. R. Civ. P. 10(c)).

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks jurisdiction over the subject matter. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). The Defendants argue that the claims relating to the H-1B visa should be dismissed for lack of federal jurisdiction under Rule 12(b)(1). However, because that claim involves a comprehensive administrative scheme that a party is required to exhaust, the Court will analyze this claim under Rule 12(b)(6). *See Zhang v. China Gate, Inc.*, No. 2686834, 2007 WL 2686834 (W.D. Wash Sept. 7, 2007); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 647 (S.D.N.Y. 2000); *cf. Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 532–33 (7th Cir. 2006); *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001).

## ANALYSIS

The Defendants in their motion and briefing identify two possible federal questions that create subject-matter jurisdiction in this case: the breach of employment claim relating to the H-1B visa in count three of the Complaint, and the claim for impermissible withholding of wages in count four. This latter claim is made pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216. (Compl. ¶ 4.)

A. **Claim of Breach of H-1B Agreement**

The first possible source of a federal question for subject-matter jurisdiction is the breach of employment claim emanating from the H-1B visa as stated in count three. (Compl. ¶¶ 43–46.) The Plaintiff states that the "Defendants hired Plaintiff, a native of Brazil, by sponsoring his H-1B worker visa, but failed to pay Plaintiff the wage promised to him and indicated in the visa application." (*Id.* ¶ 8.) Specifically, the Plaintiff alleges that he is the "intended third party beneficiary of the employment agreement that is a part of the H-1B visa," (*id.* ¶ 43), and he has met his "contractual obligations under the term of the H-1B visa," (*id.* ¶ 44). The Plaintiff explicitly states his claim relating to the H-1B visa as a contractual claim. "Defendants breached the express and implied terms of the H-1B visa agreement." (Compl. ¶ 45.)

The Defendants argue that the statute governing H-1B visa programs—the Immigration and Naturalization Act (INA), particularly 8 U.S.C. § 1182(n)—does not provide a private cause of action for violations of the statute or any visa-related agreement unless the plaintiff exhausts administrative remedies. The Plaintiff distinguishes the cases cited by the Defendants, arguing that his claim does not require exhaustion of administrative remedies and may be heard in federal court.

The existence of the H-1B visa in this case is not enough to create a federal question. In other words, just because the document is a federal document that was created by a federal law does not mean that an alleged breach of its terms creates federal jurisdiction. "Federal question jurisdiction does not rest merely on some obscure relationship between the cause of action and a federal law. Rather courts look to whether a federal question is presented in a 'well-pleaded complaint.'" *Fornalik v Perryman*, 223 F.3d 523, 532 (7th Cir. 2000). "It is standard learning

that federal question jurisdiction arises only when the complaint standing alone establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williams v. Aztar Ind. Gaming Corp.*, 351 F3d 294, 298 (7th Cir 2003) (internal quotations omitted).

Federal courts cannot "turn a blind eye to the unfounded invocation of federal jurisdiction," *Taake v. County of Monroe*, 530 F.3d 538, 541 (7th Cir. 2008), or "ignore the very task we are required to undertake as a court of limited jurisdiction—determining whether we are permitted by the Constitution and Congress to adjudicate a particular matter," *id.* at 541–42. *Taake* provides a useful analogy to this case. The essence of that case was a claim that the county breached an agreement to sell the plaintiff a parcel of land. The plaintiff phrased his complaint with substantive and procedural due process claims, but the court determined that a breach of contract, even by the government, is still only a state-law claim. *Id.* at 542–43. Similarly, an alleged breach of terms in an H-1B visa is still only a state-law breach of contract claim.

The Plaintiff attacks the Defendant's legal authority, but the Plaintiff failed to cite to any case recognizing federal question jurisdiction for a claim that an employer breached an agreement in an H-1B visa. The Court was unable to find any such cases. In cases where the court was considering claims relating to an alleged breach of a visa or the law governing visas, the jurisdiction was based on either diversity or another federal statute, usually the Fair Labor Standards Act. *See, e.g.*, *Goel v. Patni Computer Sys., Inc.*, No. 07-cv-1034, 2008 WL 4185691 (C.D. Ill. Sept. 8, 2008) (holder of H-1B visa sued employer for state law employment claims in diversity case); *Patel v. Boghra*, No. 07 C 6557, 2008 WL 2477695 (N.D. Ill. June 18, 2008)

6

(stating that the "sole basis alleged for federal jurisdiction in this case is diversity"); *Ndiaye v. CVS Pharmacy 6081*, 547 F. Supp. 2d 807 (S.D. Ohio 2008) (holder of H-1B visa sued employer under FLSA).

Another problem for the Plaintiff is that there is indeed, as the Defendants argue, no private cause of action for a violation of the law governing H-1B visas unless administrative remedies have been exhausted. *Ndiaye*, 547 F. Supp. 2d at 812 (plaintiff suing for violations of 8 U.S.C. § 1182 can only sue after exhausting administrative remedies); *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 422–23 (4th Cir. 2005); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 646–50 (S.D.N.Y. 2000); *but see Rao v. Covansys Corp.,* No. 06 C 5451, 2007 WL 3232492, *3 n.3 (N.D. Ill. Nov. 1, 2007) (stating that state law claims of breach of fiduciary duty and breach of contract can be brought under the Immigration and Naturalization Act because "a district court is not without jurisdiction to consider a case where the existence of a private right of action is implicated").[3]

The Plaintiff is correct to some extent that the cases[4] cited by the Defendant can be distinguished from this case because none of them involved the holders of an H-1B visa suing their employers. However, the principle underlying the ruling in those cases—that there is no private cause of action for breaching the terms of a visa agreement or violating 8 U.S.C.

---

[3] In *Rao*, that statement was dicta, and the court granted summary judgment to the defendant on all three claims in the case. Also, the weight of authority favors the view that a party must exhaust administrative remedies before suing for a violation of an H-1B visa or the related law, and the analysis in those cases is more persuasive than the one in *Rao*, which only cited to one Supreme Court case.

[4] *Watson v. Elec. Data Sys.*, 191 F. App'x 315, 315 (5th Cir. 2006); *Tudoriu v. Horseshoe Casino Hammond*, No. 2:04 CV 294, 2006 WL 752490 (N.D. Ind. Mar. 21, 2006); *Goel v. United States*, 62 Fed. Cl. 807 (Fed. Cl. 2004); *Biran v. J.P. Morgan Chase & Co.*, No. 02 CIV 5506, 2002 WL 31040345 (S.D.N.Y. Sept. 12, 2002); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 648 (S.D.N.Y. 2000).

§ 1182—applies to this case as well. For example, in *Zhang v. China Gate, Inc.*, No. 2686834, 2007 WL 2686834 (W.D. Wash. Sept. 7, 2007), the plaintiff sued her former employer for, *inter alia*, breach of contract relating to her status as H-1B visa holder under 8 U.S.C. § 1182(n)(2). *Id.* at *1. The court ruled that the statute's comprehensive regulatory enforcement scheme requires parties to exhaust their administrative remedies before seeking relief in federal court. *Id.* at *2–3 (citing *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418 (4th Cir. 2005), and *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641 (S.D.N.Y.2000)). The plaintiff in that case had not exhausted her administrative remedies, so her complaint was dismissed pursuant to Rule 12(b)(6). *Id.* at *3. *Venkatraman* involved a United States citizen suing his former employer for allegedly providing false information to the government regarding its use of H-1B visa holders, and *Shah* involved citizens and foreign workers suing a company for allegedly violating the INA.

In conclusion, the weight of authority on this matter strongly indicates there is no private right of action (absent exhaustion of administrative remedies, which the Plaintiff does not argue he did) for parties such as the Plaintiff in this case who believe their employer violated the terms of a visa agreement in violation of the INA. Therefore, this claim must be dismissed under Rule 12(b)(6).

**B.     Fair Labor Standards Act Claim**

The other possible basis for federal question jurisdiction is the Plaintiff's claim that the Defendants violated the FLSA. The Plaintiff states that this claim "may be found in paragraphs 4 and 9." (Pl. Resp. to Defs. Mot. 4.) Paragraph four states: "This Court has jurisdiction pursuant to the Federal [*sic*] Labor Standards Act, 29 U.S.C. § 216 and 28 U.S.C. § 1331. Plaintiff has

consented to file this lawsuit under th Fair Labor Standards Act." (Compl. ¶ 4.) Paragraph nine states: "Plaintiff Alves seeks back wages / (vacation) and statutory damages under federal and state labor law." (*Id.* ¶ 9.)

The Defendants argue that the Plaintiff falls into the "administrative" exemption of the FLSA. *See* 29 U.S.C. § 213(a)(1) (stating that "any employee in a bona fide . . . administrative . . . capacity" is exempt from minimum wage and overtime requirements). It is the Defendant's burden "to establish that an employee falls within the FLSA's administrative exemption." *Roe-Midgett v. CC Serv., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008). "Determining the duties encompassed by an employee's position is a question of fact; determining the appropriate FLSA classification is a question of law." *Id.*

"Congress has charged the Secretary of Labor with issuing regulations defining and delimiting the term 'bona fide administrative capacity.'" *Id.* (quoting 29 U.S.C. § 213(a)(1)). "In 2004 the Secretary issued a comprehensive set of new regulations addressing the scope of the overtime exemptions." *Id.* They are:

> a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200 (2008).

**(1)** *The Compensation Requirement*

The Plaintiff's compensation meets the first criteria for an administrative employee because his salary of $60,000 means he earned about $1153.85 per week, well more than the required $455 per week. 29 C.F.R. § 541.200(a)(1). The Complaint notes that the Plaintiff was to be paid $60,000 annually. (Compl. ¶ 15) (citing Ex. 4). Exhibit 4 is an August 4, 2003, document on Masters Entertainment Group, LLC, letterhead that states that the Plaintiff "is a regular full time employee at Masters Entertainment Group, LLC[,] since March of 2002, having the position of Vice President, Operations, and earning an annual salary of $60,000.00 (sixty thousands dollars)." (Ex. 4, DE 1-4 at 7.)

**(2)** *Requirement that the Employee's Work Be Directly Related to the Management or General Business Operations of the Employer or the Employer's Customers*

To determine if the Plaintiff's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," 29 C.F.R. § 541.200(a)(2), the Court looks to 29 C.F.R. § 541.201. The phrase "refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). The regulations list examples of "[w]ork directly related to management or general business operations": finance, advertising, marketing, personnel management, human resources. § 541.201(b).

The Plaintiff's duties fit this criteria. As Vice President of Operations, he "had the right and authority to take all actions that he deemed necessary, useful, or appropriate for the day-to-day management," (Compl. ¶ 19), and he "was to supervise the areas of bowling

10

operations, central control operations, pro shop operations," etc., (*Id.* ¶ 20). His position "was a professional one." (*Id.* ¶ 12.)

A letter from the Defendant company's CEO, Defendant Teixeira, to an immigration official stated that the company "requires the services of a professional trained in business, finance, planning, marketing, and operation, in order to assist in the development and in the execution of its business plan." (Teixeira Letter, Apr. 5, 2002, Ex. 1, DE 1-2 at 1.) These are some of the same words listed in the regulation for a bona fide administrative employee. In the company's owner's agreement, the responsibilities of the vice president of operations are:

> supervise the following areas of the Company: Bowling Operations, Central Control Operations; Pro-Shop Operations; Café & Food Court Operations; D. J. Services; Events coordination; Bar Operations; and Equipment and Facilities Maintenance. It is agreed that Alves will be the Vice President, Operations of the Company.

(Masters Entertainment Group, LLC, Owners Agreement, Ex. 3, DE 1-4 at 4.) Supervising these aspects of the business requires personnel management, one of the examples listed in the regulations for an administrative employee.

The Plaintiff's own Complaint and exhibits establish that his work as vice president of operations "directly related to management or general business operations," C.F.R. § 541.200(a)(2), because his work in business, finance, planning, marketing, and operation of many portions of the business fit the criteria outlined in the regulations.

### *(3) Requirement That Employee's Primary Duty Include the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance*

The third criteria to be a bona fide administrative employee is that the person's "primary duty includes the exercise of discretion and independent judgment with respect to matters of

11

significance." 29 C.F.R. § 541.200(a)(3).

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a). The regulations go on to list a number of relevant "[f]actors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance," 29 C.F.R. § 541.202(b). They are:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; . . . whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; [and] whether the employee is involved in planning long- or short-term business objectives.

*Id.* Also, an administrative employee's decision do not have to "have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.202(c).

> The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

*Id.*

In this case, the Plaintiff was both vice president of operations and a co-owner of the company. Because the Plaintiff "had the right and authority to take all actions that he deemed necessary, useful, or appropriate for the day-to-day management," (Compl. ¶ 19), he fits both the description of an employee who "has authority to formulate, affect, interpret, or implement

12

management policies or operating practices." 29 C.F.R. § 541.202(b) and who "has authority to waive or deviate from established policies and procedures without prior approval." *Id.*

The Plaintiff's responsibility for and supervision of "bowling operations, central control operations, pro shop operations," etc., (Compl. ¶ 20) (*see also* Owners Agreement, Ex. 3, ¶ 3.2, DE 1-4 at 4), indicates that he fits the criteria of an employee who "performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business." 29 C.F.R. § 541.202(b).

As one of two owners, the Plaintiff made "the final decision," (Owners Agreement, Ex. 3, ¶ 3.3, DE 1-4 at 4), in the event of an impasse for those areas over which he "is directly responsible." (*Id.*) Because those areas included the many aspects of the operations of the company, this indicates he had "authority to commit the employer in matters that have significant financial impact," 29 C.F.R. § 541.202(b), even if Defendant Teixeira, as the other owner, decided on "issues related to finance and personnel matters," (Owners Agreement, Ex. 3, ¶ 3.3, DE 1-4 at 4).

As co-owners, the Plaintiff and Defendant Teixeira agreed to "manage the Company by mutual agreement, whenever is possible," (*id.*), and to "decide mutual agreement . . . how to distribute the annual income to be generated by the Company." (*id.* ¶ 4.3; DE 1-4 at 5). It does not matter so much that Defendant Teixeira held the superior position of the two owners and had the final say because the Plaintiff's decision on shared matters did not have to be final. 29 C.F.R. § 541.202(c) ("The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."). Because the owners agreement called for

13

the Plaintiff and Defendant Teixeira to make major decisions together, and because no other employee held a higher position than the Plaintiff, the Plaintiff fits the criteria of someone having the "authority to negotiate and bind the company on significant matters." 29 C.F.R. § 541.202(b).

Last, the original description of the Plaintiff's job duties as a "consultant" indicates he is an administrative employee. The Defendants sought to hire "a professional trained in business, finance, planning, marketing, and operation, in order to assist in the development and in the execution of its business plan." (Teixeira Letter at 1, Apr. 5, 2002, DE 1-2.) "The offered position requires . . . extensive experience in developing businesses from concept to planning, financing, marketing, training, and operation." (*Id.*) This job description for the Plaintiff's position indicates that he was an employee who provides consultation or expert advice to management," 29 C.F.R. § 541.202(b), and "is involved in planning long- or short-term business objectives." *Id.*

In sum, the Plaintiff's Complaint and exhibits establish that he falls into the category of an administrative employee who is exempt from the FLSA. Therefore, his claim made pursuant to the FLSA must be dismissed under Rule 12(b)(6).

**C.    State Law Claims**

Having determined that the two possible federal claims must be dismissed, the Court turns to the question of whether it should exercise supplemental jurisdiction over the remaining claims in this case, all of which arise under Indiana law. The basis of the Court's jurisdiction over the state law claims lies in it supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (extending

14

federal district court's jurisdiction to all claims that are so related to a claim within the court's original jurisdiction that they form part of the same case or controversy within the meaning of Article III of the Constitution).

Although § 1367(a) authorizes federal courts to exercise supplemental jurisdiction over state law claims, it does not require the court to do so in all cases. District courts can decline to exercise jurisdiction over supplemental state law claims for a number of reasons, which are specifically enumerated in § 1367. Relevant here, subsection (c)(3) states that a court can decline to exercise supplemental jurisdiction when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The statute . . . reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi, v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The Seventh Circuit has identified three situations where a court should retain jurisdiction over supplemental claims even though the federal claims have dropped out: where the statute of limitations would bar the refiling of the supplemental claims in state court; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided. *Williams v. Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007) (citing *Wright*, 29 F.3d at 1251–52).

15

In this case, there is no information to suggest that the statute of limitations would bar the refiling of these state claims in state court. In fact, the Defendants' Brief states that there are already two pending state court cases involving the same parties and the same or similar claims. No judicial resources, let along substantial, have been expended on the resolution of the supplemental state law claims. Last, there is no indication that it is obvious how the claims should be decided. Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims, and they are dismissed.

**D.     Abstention**

When a federal court abstains from a case because of a parallel case in another court under *Colorado River* or some other abstention, the federal court stays the case but "[i]t should not dismiss the proceedings before it." *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002). Because this Court has already determined that it must dismiss the two claims upon which any federal jurisdiction rested (and thus leading to dismissal of the state law claims), the Court will not consider the abstention argument. The Court cannot both dismiss the case and alternatively stay the case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion to Dismiss [DE 6], and the Complaint is DISMISSED in its entirety.

So ORDERED on September 30, 2008.

      s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION